IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LEONARD MAZZOLA**,<br><br>　　　　　　*Plaintiff*,<br><br>vs.<br><br>**ANTHONY TOGLIATTI**, *et al.*<br><br>　　　　　　*Defendants*. | Case No. 1:19-CV-02519<br>Judge Philip J. Calabrese<br><br>Magistrate Judge David A. Ruiz |
| **PLAINTIFF LEONARD MAZZOLA'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** | |

　　　　Plaintiff Leonard Mazzola respectfully requests that the Court grant leave to file the Second Amended Complaint under Fed. R. Civ. P. 15(a), in which Mazzola seeks to re-assert a First Amendment-retaliation claim against Defendant Gregory O'Brien based on new information discovered in October 2020, as an alternative to the Court ruling on Mazzola's Motion for Reconsideration of Qualified Immunity Granted to Defendant Gregory O'Brien (ECF No. 173) and to avoid the need for Mazzola to pursue a separate lawsuit against Defendant O'Brien and/or consolidate it with this action.

　　　　A memorandum in support follows.

**INTRODUCTION**

Plaintiff Leonard Mazzola respectfully requests leave to file the Second Amended Complaint, which is attached as Exhibit 1. One day before this Court granted qualified immunity to Defendant O'Brien on Plaintiff Leonard Mazzola's 42 U.S.C. § 1983 First Amendment–retaliation claim, the Court ordered Defendants to produce documents and testimony they had previously withheld based on an improper assertion of attorney-client privilege.[1] Four days after the Court ruled Defendant O'Brien qualifiedly immune, Defendants produced evidence disproving that ruling's factual basis.[2]

On November 11, 2020, Plaintiff Leonard Mazzola moved the Court to lift the stay entered to accommodate two other Defendants' qualified-immunity appeals for the limited purpose of reconsidering the qualified-immunity decision that turned out to be factually unfounded because Defendants had withheld evidence.[3] If the Court grants reconsideration and denies Defendant O'Brien qualified immunity, the Court need not decide this motion, which Plaintiff Mazzola has filed in an abundance of caution before the relevant statute of limitations for § 1983 claims.

**ISSUE PRESENTED**

Fed. R. Civ. P. 15(a)(2) requires district courts to "freely give leave" to amend complaints "when justice so requires." Mazzola seeks to amend his complaint based on new evidence unavailable to him when he filed the operative complaint. He received the new evidence in October 2020, only after the Court compelled Defendants to produce it. Does justice require the Court to grant leave to amend?

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. The Court ordered Defendants to produce new evidence in October 2020.**

On October 14, 2020, the Court, through the Magistrate Judge, granted Plaintiff Leonard Mazzola's Motion to Compel Testimony of Defendant Gregory O'Brien on Specific Subject Matters

---

[1] *See* ECF No. 146.

[2] *See* ECF Nos. 162 (Court's order requiring document production after in camera review); 163 (Defendants' notice of production); 172 (Plaintiff's notice of filing deposition transcript with exhibits).

[3] *See* ECF Nos. 173, 173-1. Defendant O'Brien's qualified-immunity denial is not the subject of any appeal.

or, Alternatively, Determine His Legal Unavailability and to Compel Production of Sufficient Privilege Log with In Camera Review of Emails Withheld as Privileged.[4] The order held that attorney-client privilege did not apply to five specific subject areas for which Defendants withheld evidence based on assertion of privilege and that Mazzola was entitled to deposition testimony and documents from Defendant O'Brien within these areas.[5]

## II. The next day, the Court entered its order granting qualified immunity to Defendant O'Brien.

The next day, On October 15, 2020, the Court entered an order on summary judgment that included granting qualified immunity to O'Brien on Mazzola's 42 U.S.C. § 1983 individual-capacity First Amendment–retaliation claim.[6] The Court's ruling was premised on its findings that O'Brien's "involvement was largely limited to relaying information."[7] The Court explained that "Defendant O'Brien, Defendant City's law director, testified that he told union lawyer Phillips that the City planned to punish Mazzola and 'expected Phillips' to relay that information."[8] The Court noted that "[t]he record does not show that Mr. Mazzola ever saw" Defendant O'Brien's March 28, 2019 email to union attorney Robert Phillips "outlin[ing] the City's potential charges against Mazzola."[9]

Defendant O'Brien's March 28, 2019 email to Phillips, which is attached as Exhibit 1 for the Court's convenience, stated that the City "intended" to discipline Mazzola for allegedly: "Lying during a formal internal investigation on the unauthorized dissemination of departmental documents; Lying to the Mayor regarding performance measurement standards allegedly approved by the Chief[;] Intentionally ignoring a previous departmental order, ten (10) incidents of usurping his superiors to directly communicate with City officials and employees regarding departmental

---

[4] Ord., ECF No. 146.
[5] Ord. 6, Doc. 146.
[6] Ord. 16, Doc. 147.
[7] *Id.*
[8] *Id.*
[9] *Id.*

staffing, training, and policies and procedures[;] [and] The release of departmental documents outside of the police department[.]"[10]

The Court went on to rule that the available evidence was insufficient to prove that Defendant O'Brien "was acting in a 'discretionary' capacity to violate Mazzola's First Amendment rights" or "had any decision-making input into the alleged retaliation scheme."[11]

### III. The Court ordered Defendants to submit the previously withheld evidence for in camera review to ascertain privilege applicability and then ordered Defendants to produce new evidence and submit Defendant O'Brien for further deposition testimony.

Later that day, at the October 15, 2020 pretrial conference, the Court orally ordered Defendants to submit the documents identified in the privilege log for *in camera* review and to produce Defendant O'Brien for deposition on October 20, 2020. After filing a notice of interlocutory appeal on the Court's denial of qualified immunity to Defendant Kilbane[12] on October 16, 2020, Defendants City of Independence, Kilbane, and O'Brien filed a notice advising that they had produced the documents to the Court.[13]

On October 19, 2020, the Court compelled these Defendants to produce, by 4:00 p.m. that day, 41 previously withheld documents in their entirety, six previously withheld documents with redactions for privileged portions, and nine previously produced but redacted documents with redactions removed.[14] Defendants timely produced the documents,[15] and Defendant O'Brien gave

---

[10] **Ex. 2**, Defs.' Dep. Ex. 56 to O'Brien Dep., Email from O'Brien to Phillips sent March 28, 2019 at 11:57 a.m.

Although not specifically mentioned by the Court in its opinion, Defendant O'Brien's March 29, 2019 email to Phillips further substantiates the ultimatum by expressly setting forth a quid pro quo: "Provided Lt. Mazzola retires" and "submit[s] his letter of retirement immediately[,]" Mazzola "will be retiring at the rank of Lieutenant" (as opposed to patrol officer) and his "personnel file will remain as it currently exists. There have been no written reports created as a result of the most recent investigation." This email is attached in **Ex. 3** for the Court's convenience, ECF No. 93-1, Ex. 1 – C, DFNTS_0000323–24.

[11] *Id.*
[12] Defs.' Not. of appeal, ECF No. 154.
[13] Defs.' Not. of prod. of emails to Court, ECF No. 157.
[14] Opin. and Ord. 2–4, ECF No. 162.
[15] Defs.' Not. of prod. of emails pursuant to Oct. 19, 2020 Ord., ECF No. 163.

deposition testimony as scheduled on October 20, 2020.[16]

**IV. The documents Defendants produced on October 19, 2020 and Defendant O'Brien's October 20, 2020 testimony provided new evidence unavailable to Mazzola when he filed the operative complaint.**

  **A. The new evidence established that Defendant O'Brien personally conveyed the ultimatum forcing Mazzola to choose between punitive discipline and early retirement in a March 25, 2019 call with union attorney Robert Phillips.**

Before the Defendants produced the new (to Mazzola) evidence in October 2020, Defendant O'Brien testified at his first deposition on July 30, 2020 that he did not remember the content of his unprivileged telephone call(s) with union attorney Robert Phillips about the City's investigation of Mazzola.[17] In July 2020, Defendant O'Brien claimed he did not remember whether he spoke to Phillips about any of the following:

- whether the City considered demoting Mr. Mazzola,[18]

- whether the City consider reporting Mazzola to the County prosecutor for addition to the *Brady/Giglio* list of dishonest officers,[19] nor

- whether then-Lieutenant Mazzola could avoid discipline by retiring.[20]

The documents produced on October 19, 2020 and O'Brien's court-ordered October 20 testimony proved that he spoke to Phillips about all three—confirming Mazzola's factual allegations.

On Friday, March 22, 2019, Defendant O'Brien "was summoned out to the Mayor's office" to learn "what the investigation of Mr. Mazzola entailed[,]"[21] and "agreed to approach Bob Phillips

---

[16] Dep. of Gregory O'Brien, Oct. 20, 2020, ECF No. 172-1.
[17] Dep. of O'Brien 13:4–13, Jul. 30, 2020, ECF No. 81 (attached as **Ex. 4**) ("Q: In general, what was—I guess how would you characterize the nature of the communications you had with Bob Phillips during the time period we've mentioned between when the investigation started and when Mr. Mazzola retired? A: Very limited. I don't recall more than, like I said, two or three phone calls with Bob, brief phone calls. Most of our communication was done via emails.")
[18] *Id.* at 19:24–21:12.
[19] *Id.* at 21:13–20.
[20] *Id.* at 40:3–21.
[21] O'Brien Dep. (Oct. 20, 2020) at 130:10–16.

and see what he had to say about this whole matter."[22] Defendant O'Brien spoke with Phillips by phone on Monday, March 25, 2019, and he summarized that call in an email he sent the same day to Defendants Kilbane and Togliatti and City Human Resources Director Leticia Linker.[23]

That March 25, 2019 email stated that Defendant O'Brien and Phillips "discussed the areas that a pre-disciplinary hearing would cover: (1) circumventing the chain of command, (2) overt disregard for directives of a superior officer; and (3) lying/dishonesty."[24] Defendant O'Brien "informed Bob the City would not be seeking [Mazzola's] termination and provided that we would demote Lenny to patrol officer."[25] They then "discussed the viable alternative of Lenny retiring at his current grade without Bill Evans [*sic*] report being created."[26]

Defendant O'Brien and Phillips also talked about "an arbitration that included, in part, dishonesty disqualifiers[,]" and when Phillips took the position that "a '*Brady* disqualifier' only occurs when there has been an adjudication of the officer's deception[,]" O'Brien "reminded Bob that would include an arbitration in [O'Brien's] opinion."[27] Defendant O'Brien then went further and "informed Bob that the City would be left with whether Lenny could serve as a police officer if he was disqualified as a witness because of dishonesty."[28] He "told Bob if, after an arbitration, it was found that Lenny could not serve as a witness[,] then at that point the City may take the position he cannot serve an essential function of his position[,] which could affect Lenny's employment."[29] Phillips asked O'Brien to provide him "bullet points" of the possible charges so Phillips could

---

[22] *Id.* at 130:17–20.
[23] Email from O'Brien to Kilbane, Linker, and Togliatti sent Mar. 25, 2019 at 2:41 p.m., Ex. 22 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 4**).
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

discuss them with Mazzola.[30] O'Brien told Phillips he would call him back after speaking with Kilbane.[31]

Defendant O'Brien confirmed in his October 20, 2020 deposition testimony that his March 25, 2019 email accurately described that conversation with Phillips.[32] He did tell Phillips that Mazzola could retire to avoid discipline,[33] that a disciplinary arbitration would include *Brady* dishonesty disqualifiers, and that arbitration would be sufficient "adjudication" to disqualify Mazzola from testifying.[34] O'Brien expected Phillips to tell Mazzola all of this information.[35]

When asked whether the facts contained in the email were true—as opposed to whether the email accurately reflected what he told Phillips, which it did—O'Brien testified in October 2020 that he decided what information to convey to Mazzola through Phillips. When asked if it was true that the City actually intended to ("would") demote Mazzola to patrol officer, O'Brien claimed: "No. That is not true."[36] O'Brien also denied in his October 2020 testimony that the City planned to have Mazzola added to the *Brady/Giglio* list and that the City planned to take the position that Mazzola should be terminated if demoted and added to the *Brady/Giglio* list.[37] He testified that he "knew the City was contemplating disciplining Mr. Mazzola" but "was not part of any discussion of what that discipline would look like or what was the result."[38] If this testimony is accurate, and O'Brien was not falling on his sword for his clients, it means that he took it upon himself to threaten Mazzola through Phillips that the City "would" demote Mazzola even when he did not know if that is what the City intended to do.

---

[30] *Id.*
[31] *Id.*
[32] O'Brien Dep. (Oct. 20, 2020) at 128:1–7.
[33] *Id.* at 133:1–6.
[34] *Id.* at 133:7–20.
[35] *Id.* at 138:8–18.
[36] *Id.* at 139:8–12.
[37] *Id.* at 140:16–141:8.
[38] *Id.* at 139:13–17.

Similarly, O'Brien admittedly told Phillips that "If after an arbitration it was found that Lenny could not serve as a witness, then at that point the City may take the position he cannot serve an essential function of his position which could affect Lenny's employment[,]"[39] but testified in October 2020 that he "didn't know what the City was contemplating or not."[40] Taking Defendant O'Brien's October testimony at face value, he independently decided to intimate this threat to Mazzola's employment—and then emailed Defendants Kilbane and Togliatti to tell them what he said to Phillips.[41]

### B. Defendant O'Brien selected among information provided by City officials to prepare the bullet-pointed email describing potential discipline to Phillips.

O'Brien received multiple emails from "various individuals" to help him prepare his March 28, 2019 bullet-pointed email to Phillips.[42] He ultimately based that email primarily upon information and direction from Defendant Kilbane.[43]

He also received input from Human Resources Director Letitia Linker, who emailed a draft predisciplinary notice to O'Brien and Kilbane at 12:25 p.m. UTC on March 27, 2019.[44] The notice stated: "As the result of Lt. Mazzola's performance and actions, a predisciplinary conference is scheduled for _____." (Blank in the original.) The notice listed the specific charges the hearing would address: "The meeting will address charges under: GENERAL ORDER: 502 Uniform Standards of Conduct[:] 11. Dishonesty or Untruthfulness[;] 12. Displaying Competent Performance and Achieving Competent Performance Results[;] 16. Insubordination[;] 17. Knowing, Observing, and Obeying All Directives, Rules, Policies, Procedures, Practices and Traditions[;] GENERAL

---

[39] *Id.* at 135:20–136:15.
[40] *Id.* 136:21–23.
[41] *Id.* 136:21–137:3.
[42] *Id.* at 155:11–25.
[43] O'Brien Dep. (Oct. 20, 2020) at 162:4–23, 161:4–14; *see* **Ex. 2**, Defs.' Dep. Ex. 56 to O'Brien Dep.
[44] Email from Linker to O'Brien and Kilbane, Mar. 27, 2019, Ex. 23 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 4**).

ORDER: 601: Records Security and Privacy[; and] GENERAL ORDER: 108: Media Relations[.]"[45]

Linker's email also explained the factual basis for the proposed charges: "Lt. Mazzola's repeated failure to follow departmental regulations as well as orders and direction of the Chief" including "creating and implementing performance standards inconsistent with the Chief's directive and without his knowledge or approval";[46] "communicating police operational matters not known to the Chief with City officials and department staff";[47] "violating order regarding communication of police matters";[48] "dishonesty while participating in an investigation conducted by a third party as evidenced by failure of a polygraph";[49] and "failure to follow operational directives."[50]

### C. Defendant O'Brien's March 28, 2019 email to Defendants Kilbane and Togliatti and the Human Resources Director showed that Defendant O'Brien participated in decision-making.

On March 28, 2019, O'Brien sent an email to Defendant Kilbane (copying Defendant Togliatti and Linker) advising that after his previous email to them (which was fully redacted as privileged), Phillips called to advise that "he took good notes from our previous discussion [of March 25, 2019] and met with Mr. Mazzola"[51] and that "[b]ased upon that discussion…Lt. Mazzola has decided to retire."[52] O'Brien wrote that he still needed to send the bullet-pointed email explaining the City's planned discipline to Phillips "as he wants to share the information with Lt.

---

[45] Email from Linker to O'Brien and Kilbane, Mar. 27, 2019, Ex. 23 to O'Brien's Dep. of Oct. 20, 2020 (included in **Ex. 4**).
[46] Defendant O'Brien related this charge to "a conversation [Mr. Mazzola] had with Mayor Togliatti about [Mr. Mazzola's] point system versus the point system that the police department wanted to implement." O'Brien Dep. (Oct. 20, 2020) at 159:21–160:10; *see also, id.* at 164:10–23.
[47] When Mr. Mazzola's counsel asked whether this charge encompassed Mr. Mazzola speaking to then-Mayor Togliatti about the traffic-ticket quota. Defendant O'Brien testified: "I believe the issue was Lieutenant Mazzola's performance standard metrics policy versus the Chief's policy. Yes, I believe that was the purpose of him going to see Mayor Togliatti." *Id.* at 153:9–25.
[48] Defendant O'Brien claimed he did not remember the basis for this charge, but it appears intended to represent Mazzola's alleged "communication of police matters" with the media. *Id.* at 154:5–18.
[49] This charge is self-explanatory.
[50] Defendant O'Brien did not explain this charge.
[51] Email from Linker to O'Brien and Kilbane, Mar. 27, 2019, Ex. 23 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 4**).
[52] *Id.*

Mazzola to support their discussion and his decision to retire."[53] O'Brien had reassured Phillips that he would personally handle "the written resolution of finalizing of Lt. Mazzola's retirement[.]"[54]

O'Brien wrote in this email that he believed it was important for the City to issue a communication "that Lt. Mazzola is retiring and that we wish him well."[55] He also recommended that the City Council and Mayor to provide a "retirement presentation" like they had done "for other retiring police officers" because that "will allow him to leave the City with his 'head held high'[.]"[56]

### D. Defendant O'Brien's October 20, 2020 testimony revealed that he knowingly included potential charges based on Mazzola's protected speech in his March 28, 2019 bullet-pointed email to Phillips.

In his October 2020 deposition, O'Brien admitted that the March 28, 2019 email's reference to "[l]ying to the Mayor regarding performance measurement standards allegedly approved by the Chief" referred to Mazzola talking to Mayor Togliatti about the performance standard for patrol officers.[57] He also admitted that his email's reference to Mazzola's alleged "insubordination" by way of "usurping his superiors to directly communicate with City officials and employees" involved "incidents where Mazzola was going around Chief Kilbane and speaking specifically to Letitia Linker and/or the Mayor."[58] He admitted he knew these "incidents" included discussions with Defendant Togliatti about the quota.[59]

This Court has already ruled that these "incidents" were speech protected by the First Amendment.[60]

---

[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] O'Brien Dep. (Oct. 20, 2020) at 164:10–23.
[58] *Id.* at 165:4–19.
[59] *Id.* at 165:20–166:5.
[60] Ord., ECF No. 147 at 7–9.

E. **Defendant O'Brien independently decided to require Mazzola to provide his formal notice of retirement within two hours, which was one of the specific acts of retaliation alleged in the complaint.**

O'Brien testified in October 2020 that he, individually, decided to impose the 5:00 p.m. deadline for Mazzola to submit his official notice of retirement to the mayor.[61] As alleged in the complaint, this arbitrary and sudden deadline interfered with the normal course of an officer's retirement and was one act of retaliation Defendants took against him.[62]

F. **Defendant O'Brien knowingly attempted to restrain Mazzola's post-retirement speech.**

O'Brien emailed Kilbane and Linker, copying Togliatti, on March 29, 2019 at 7:19 p.m., more than two hours *after* Mazzola had emailed his official notice of retirement to Togliatti.[63] The subject line of the email was "Robert Phillips," and the email simply stated: "Message delivered to Bob. He will mention it to Lenny about going quietly into the night."[64]

By way of explanation, O'Brien testified that he communicated to Phillips "a concern that Lenny would actively—after his retirement actively go out of his way to contact police officers to disrupt the organization and procedures of the City. And what he does as a private citizen is fine, but wanted to make sure he didn't actively try to have the officers in the police department, you know, cause a ruckus."[65]

---

[61] *Id.* at 186:7–19.
[62] *See* First. Am. Compl. ¶¶ 129(e), 86–89, Doc. 7.
[63] Email from L. Mazzola to A. Togliatti sent 4:59 p.m. on Mar. 29, 2019, Doc. 93-1 ¶13, DFNTS_0000873–74 (included in **Ex. 3**).
[64] Email from O'Brien to Kilbane, Linker, and Togliatti, Mar. 29, 2019, Ex. 29 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 4)**.
[65] O'Brien Dep. at 177:12–20.

**LAW AND ARGUMENT**

I. **The Court should grant Mazzola leave to amend his complaint because justice requires amendment.**

Fed. R. Civ. P. 15(a)(2) directs district courts to "freely give leave" to amend "when justice so requires." The Second Amended Complaint seeks to amend to re-urge Mazzola's claim of First Amendment retaliation under 42 U.S.C. § 1983 against Defendant O'Brien based on the *new* evidence.[66] Here, justice requires granting leave for Mazzola to amend his complaint because the proposed amendment re-urging his First Amendment–retaliation claim against Defendant O'Brien is based on evidence that Mazzola had requested but that Defendants improperly withheld based on false claims of privilege, and did not produce until after summary-judgment briefing and decision (October 19 and 20, 2020).[67]

The Court granted qualified immunity to Defendant O'Brien because it found that then-available evidence showed O'Brien was a mere messenger instead of a City official who acted in a discretionary capacity to participate in the First Amendment retaliation.[68] The newly produced evidence, which this Court was unable to consider, directly refuted this factual finding. This evidence and O'Brien's October 2020 deposition testimony demonstrated that he participated in First Amendment retaliation against Mazzola by engaging in the following discretionary actions:

- Meeting with other City officials, including Defendants Kilbane and Togliatti, on

---

[66] **Ex. 1**, Proposed Second Supplemental and Amended Complaint.

[67] For the Court's reference, Plaintiff's Motion to Compel Testimony of Defendant Gregory O'Brien on Specific Subject Matters or, Alternatively, Determine his Legal Unavailability and to Compel Production of Sufficient Privilege Log with In Camera Review of Emails Withheld as Privileged, ECF No. 113, provides the factual background for Defendants' failure to produce this evidence before summary judgment. *See also* Plaintiff's Reply memorandum, ECF No. 130. As the memoranda in support of this motion and the Court's ruling (ECF No. 146) explain, Defendants did not even disclose the *existence* of the documents in question until they belatedly produced a privilege log on October 1, 2020—after discovery and summary-judgment briefing were completed. Regardless of the reason(s) that Defendants did not disclose the existence of the purportedly privileged documents they withheld—which for purposes of this motion Mazzola presumes was inadvertent—the delayed production of the privilege log prevented Mazzola from having any opportunity to access these documents before summary-judgment briefing concluded, through no fault of his own.

[68] Ord. 16, Doc. 147.

> March 22, 2019, and agreeing to speak to Phillips about the investigation into Mazzola;[69]
>
> - Deciding what information to provide to Phillips about the City's plans to discipline Mazzola in the March 25, 2019 call;[70]
>
> - Deciding what information to include in his March 28, 2019 bullet-pointed email to Phillips memorializing the City's plans to discipline Mazzola to support Phillips's conversation with Mazzola;[71]
>
> - Knowingly including instances of Mazzola's speech about the ticket quota outside his chain of command—which O'Brien, as Law Director, should have known was protected speech—as grounds for the discipline the City had intended if Mazzola had not agreed to retire;[72]
>
> - Imposing the last-minute deadline for Mazzola to accept the deal to retire in lieu of discipline, giving Mazzola less than two hours to decide;[73]
>
> - Telling Phillips to instruct Mazzola to go "quietly into the night" after his retirement instead of speaking to officers about what happened to him.[74]

Although, as the Court noted in its summary-judgment opinion, Mazzola did not see O'Brien's March 28, 2019 email to Phillips, the newly produced evidence corroborates Mazzola's testimony that Phillips relayed the essential *contents* of that email to him—that the City planned to discipline him unless he retired immediately—before Phillips called O'Brien the morning of March 28, 2019. O'Brien's emails to City officials from March 25 and March 28, 2019 corroborate the veracity of what Mazzola has alleged and testified all along: that Phillips delivered a disciplinary ultimatum from O'Brien and that O'Brien participated in the City's planning.

Given that Defendants withheld this evidence from the Court and Mazzola until after the

---

[69] O'Brien Dep. (Oct. 20, 2020) at 130:10–20.

[70] See O'Brien Dep. (Oct. 20, 2020) at 128:1–7, 133:1–20, 138:8–18, 139:8–12, 139:13–17.

[71] *Id.* at 155:11–25; 162:4–23, 161:4–14.

[72] *Id.* at 165:4–166:5.

[73] *Id.* at 186:7–19.

[74] Email from O'Brien to Kilbane, Linker, and Togliatti, Mar. 29, 2019, Ex. 29 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 4**); O'Brien Dep. (Oct. 20, 2020) at 177:12–20.

Court decided O'Brien's qualified immunity, the interests of justice and fairness mandate amendment.

## CONCLUSION

Plaintiff Mazzola respectfully requests that the Court grant him leave to file the Second Amended Complaint, which is attached as Exhibit 1, and order the Second Amended Complaint, attached as Exhibit 1, deemed filed as of the date of this filing, March 19, 2021.

Dated: March 19, 2021                                             Respectfully submitted,

                                                                                                         */s/ Subodh Chandra*
Subodh Chandra (0069233)
Jessica S. Savoie (0099330)
Brian Bardwell (0098423)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, Ohio 44113
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com
Jessica.Savoie@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Plaintiff Leonard Mazzola*