IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LEONARD MAZZOLA,**<br>    *Plaintiff*,<br>vs.<br>**ANTHONY TOGLIATTI**, *et al.*<br>    *Defendants.* | Case No. 1:19-CV-02519<br>Judge J. Philip Calabrese<br><br>Magistrate Judge David A. Ruiz |
| **PLAINTIFF LEONARD MAZZOLA'S MOTION TO CONSOLIDATE** ||

Plaintiff Leonard Mazzola respectfully moves the Court to consolidate this matter with *Mazzola v. O'Brien*, Case No. 1:21-cv-00636, under Fed. R. Civ. P. 42(a)(2) because the two actions involve common questions of fact and law and because consolidation would help all parties and the Court avoid unnecessary cost and delay.

A memorandum in support follows.

**ISSUE PRESENTED**

Consolidation is appropriate to avoid duplicative litigation. This matter and Mazzola's separately filed action against Defendant O'Brien arise from a common core of facts and will save judicial and party resources if tried together. Should the Court consolidate these matters?

**FACTUAL AND PROCEDURAL BACKGROUND**

After the Court granted qualified immunity to Defendant O'Brien against the First Amendment–retaliation claim Mazzola urged in this lawsuit, the Court ordered Defendants to produce new evidence, which revealed new causes of action for First Amendment retaliation against O'Brien.[1] These new documents and O'Brien's October 20, 2020 testimony unveiled new information demonstrating O'Brien's acts of retaliation against Mazzola:

1. After meeting with other City officials, including Defendants Kilbane and Togliatti, on March 22, 2019, O'Brien agreed to speak to union attorney Phillips about the investigation into Mazzola[2] and then individually decided what information to provide to Phillips about whether and how the City planned to discipline Mazzola in a March 25, 2019 call he had with union attorney Phillips.[3]

2. In his March 25, 2019 call with Phillips, O'Brien made the legal argument that a disciplinary arbitration regarding alleged dishonesty would be sufficient "adjudication" of deception to constitute a *Brady* disqualifier that would effectively bar Mazzola from testifying in court.[4]

3. In the March 25, 2019 call, O'Brien made clear that the City's planned discipline could result in Mazzola's termination, telling Phillips that "the City would be left with whether

---

[1] *See* Order granting motion to compel (Oct. 14, 2020), ECF No. 146; Order granting qualified immunity to O'Brien (Oct. 15, 2020), ECF No. 147; Order requiring Defendants to produce specific emails after in camera review (Oct. 19, 2020), ECF No. 162; Dep. of O'Brien (Oct. 20, 2020), ECF No. 172-1 (referenced excerpts attached as **Ex. 1**).
[2] O'Brien Dep. (Oct. 20, 2020) at 130:10–20.
[3] O'Brien Dep. (Oct. 20, 2020) at 128:1–7, 133:1–20, 138:8–18, 139:8–12, 139:13–17.
[4] Email from O'Brien to Kilbane, Linker, and Togliatti sent Mar. 25, 2019 at 2:41 p.m., Ex. 22 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 1**).

Lenny could serve as a police officer if he was disqualified as a witness because of dishonesty" and that "if, after an arbitration, it was found that Lenny could not serve as a witness[,] then at that point the City may take the position he cannot serve an essential function of his position[,] which could affect Lenny's employment."[5]

4. Although O'Brien admitted he told Phillips that the City "would demote Lenny to patrol officer"[6] and "discussed the viable alternative of Lenny retiring at his current grade without Bill Evans [*sic*] report being created[,]"[7] O'Brien testified that he did not know what the City "would" actually do. O'Brien "knew the City was contemplating disciplining Mr. Mazzola" but "was not part of any discussion of what that discipline would look like or what was the result."[8] O'Brien specifically denied that the City intended to demote Mazzola.[9] If factually accurate, this testimony means that O'Brien independently decided to threaten to demote Mazzola if he did not retire.

5. After eliciting assistance from City officials to prepare an email to Phillips memorializing what the discipline the City had planned, O'Brien received multiple emails from "various individuals."[10] This included a draft predisciplinary notice from Human Resources Director Letitia Linker.[11] He ultimately based his email to Phillips primarily upon information and direction from Defendant Kilbane.[12]

6. In O'Brien's email to Phillips sent March 28, 2019, O'Brien knowingly included instances of Mazzola's speech about the ticket quota outside his chain of command as grounds for

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] O'Brien Dep. (Oct. 20, 2020) at 139:13–17.
[9] *Id.* at 139:8–12.
[10] *Id.* at 155:11–25.
[11] Email from Linker to O'Brien and Kilbane, Mar. 27, 2019, Ex. 23 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 1**).
[12] O'Brien Dep. (Oct. 20, 2020) at 162:4–23, 161:4–14; *see* **Ex. 2**, Defs.' Dep. Ex. 56 to O'Brien Dep.

the discipline the City had intended if Mazzola had not agreed to retire.[13] O'Brien admitted in his October 2020 testimony that the March 28, 2019 email's reference to "[l]ying to the Mayor regarding performance measurement standards allegedly approved by the Chief" referred to Mazzola talking to Mayor Togliatti about the performance standard for patrol officers.[14] He also admitted that his email's reference to Mazzola's alleged "insubordination" by way of "usurping his superiors to directly communicate with City officials and employees" involved "incidents where Mazzola was going around Chief Kilbane and speaking specifically to Letitia Linker and/or the Mayor."[15] He knew these "incidents" included discussions with Defendant Togliatti about the quota.[16] As Law Director, O'Brien should have known that, as this Court has already ruled, these "incidents" were speech protected by the First Amendment.[17]

7. O'Brien individually decided to impose the 5:00 p.m. deadline for Mazzola to submit his official notice of retirement to the mayor, which gave Mazzola less than two hours to decide whether to take the deal to retire in lieu of discipline.[18] This high-pressure deadline interfered with the normal course of an officer's retirement and was an act of retaliation, in and of itself *and* as part of Defendants' constructive discharge of Mazzola.[19]

8. More than two hours *after* Mazzola had emailed his official notice of retirement to Togliatti, O'Brien emailed Defendant Kilbane and Human Resources Director Linker: "Message delivered to [Phillips]. He will mention it to Lenny about going quietly into the

---

[13] *Id.* at 165:4–166:5.
[14] *Id.* at 164:10–23.
[15] *Id.* at 165:4–19.
[16] *Id.* at 165:20–166:5.
[17] *See* Ord., ECF No. 147 at 7–9.
[18] O'Brien Dep. (Oct. 20, 2020) at 186:7–19.
[19] *See* First. Am. Compl. ¶¶ 129(e), 86–89, ECF No. 7.

night."[20] O'Brien testified in October 2020 that he communicated to Phillips "a concern that Lenny would actively—after his retirement actively go out of his way to contact police officers to disrupt the organization and procedures of the City. And what he does as a private citizen is fine, but wanted to make sure he didn't actively try to have the officers in the police department, you know, cause a ruckus."[21] This attempt to restrain Mazzola's speech after he became a private citizen is an independent act of retaliation.

## LAW AND ARGUMENT

Under Fed. R. Civ. P. 42(a)(2), the court may consolidate actions that involve common questions or law or fact. The rule's purpose "is to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties."[22] The ultimate goal of consolidation is to avoid duplicative litigation.[23] Rule 42(a) "was designed and intended to encourage [] consolidation where possible."[24]

Here, consolidation is possible, practical, and necessary to avoid duplication of effort for the Court, the parties, and the witnesses. Mazzola's First Amendment–retaliation claim against Defendant O'Brien arises from O'Brien's actions during the same course of events described in Mazzola's original lawsuit. The Court can try all fact disputes in one proceeding and fashion an appropriate injunctive remedy in light of the evidence presented at trial. Consolidation will save time and avoid unnecessary costs to the parties, including duplication of effort in this fee-shifting matter.

---

[20] Email from O'Brien to Kilbane, Linker, and Togliatti, Mar. 29, 2019, Ex. 29 to O'Brien Dep. of Oct. 20, 2020 (included in **Ex. 1**).
[21] O'Brien Dep. (Oct. 20, 2020) at 177:12–20.
[22] Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 2381 (1971).
[23] *Twaddle v. Diem*, 200 F. App'x 435, 438 (6th Cir. 2006).
[24] *U.S. v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945).

The Court should consolidate the matters because they involve common issues of law and fact. The time and effort consolidation will save vastly outweigh any inconvenience or delay it will cause. The individual defendants, other City officials, and all of the third-party witnesses would benefit from testifying at one trial instead of two. A single trial would also be more convenient for the Court and counsel.

## CONCLUSION

Considerations of judicial economy, witness convenience, as well as the parties' interest in litigating similar issues only once recommend that cases as closely associated as these be heard together. Plaintiff Mazzola respectfully requests that this matter be consolidated with *Mazzola v. O'Brien*, Case No. 1:21-cv-00636, under Fed. R. Civ. P. 42(a)(2).

Dated: March 22, 2021            Respectfully submitted,

           */s/ Subodh Chandra*
Subodh Chandra (0069233)
Jessica S. Savoie (0099330)
Brian Bardwell (0098423)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, Ohio 44113
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com
Jessica.Savoie@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com
*Attorneys for Plaintiff Leonard Mazzola*